# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN W. CROWDER, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:09CV622DJS/MLM** |
| | ) | |
| **DAVE DORMIRE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by John W. Crowder, Jr., ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 11. Petitioner filed a Reply. Doc. 16. Also before the court is a Motion for Evidentiary Hearing filed by Petitioner. Doc. 17. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 7.

# I.
# BACKGROUND

Petitioner was charged by Amended Information as follows: Count I, the class A felony of assault in the first degree, in that on or about April 10, 2002, Petitioner, acting in concert with another, knowingly caused serious physical injury to Antwoine Smith by shooting him; and Count II, armed criminal action, in that on or about April 10, 2002, Petitioner, acting in concert with another, committed the felony of assault in the first degree, as charged in Count I, and Petitioner, acting in concert with another, knowingly committed the felony of assault in the first degree by, with and

through the use, assistance and aid of a deadly weapon, a .380 caliber semi automatic pistol. Resp. Ex. C at 31.

The testimony at Petitioner's trial was that on April 9, 2000, Petitioner and two accomplices lured the victim to a house in St. Roberts, Missouri, where they shot and stabbed him several times. The victim survived and testified against Petitioner. Resp. Ex. D, Trial Transcript ("Tr."), at 77-93. The investigating officer also testified that during his interview with Petitioner, Petitioner admitted that he attacked the victim but denied shooting him; that Petitioner told the officer that he had thrown the gun into a river and fled to North Carolina to avoid prosecution; and that Petitioner subsequently provided the officer with a written statement, in which he denied attacking the victim. Tr. at 131-32, 140-41, 163-64,1137.

Petitioner did not testify at his trial. One of Petitioner's accomplices testified that neither he nor Petitioner attacked the victim and that a third man was solely responsible for the attack. Tr. at 174-80.

Petitioner was convicted as charged. The court sentenced Petitioner to consecutive terms of thirty and twenty years. Petitioner filed a direct appeal. Resp. Ex. C at 65-66. On November 26, 2002, the Missouri appellate court affirmed Petitioner's conviction and issued the mandate on December 12, 2002. Resp. Ex. E, Ex. F.

On February 28, 2003, Petitioner mailed a pro se post conviction relief motion to the State court and the motion was received on March 3, 2003. Resp. Ex. Q at 4-5. The motion court returned Petitioner's pro se post-conviction relief motion because he had failed to sign it. Petitioner signed the motion and mailed it back to the court. Petitioner's signed pro se post-conviction relief motion was filed on April 4, 2003. Resp. Ex. Q at 6-8. Counsel was appointed and determined that no additional motion should be filed. See Crowder v. State, 258 S.W.3d 82, 83 (Mo. Ct. App. 2008).

The motion court denied Petitioner's post-conviction relief motion on the ground that it was untimely. Petitioner filed an appeal of the motion court's decision with the Missouri appellate court. Resp. Ex. G. On May 17, 2006, the Missouri appellate court remanded Petitioner's case to the motion court and ordered that the motion court afford Petitioner a hearing to determine whether the motion court had jurisdiction to determine Petitioner's Rule 29.15 motion on its merits. Resp. Ex. K. On remand, the motion court held a hearing and determined that it had jurisdiction to consider Petitioner's post-conviction claims. Resp. Ex. Q at 8. On August 2, 2007, the motion court denied Petitioner's Rule 29.15 motion. Resp. Ex. P at 5. Petitioner appealed the motion court's 2007 decision. Resp. Ex. M. By decision, dated July 14, 2008, the Missouri appellate court affirmed the decision of the motion court. Crowder, 258 S.W.3d 82; Resp. Ex. R. The mandate issued for the appeal of Petitioner's post-conviction relief motion on July 30, 2008. Resp. Ex. S.

Petitioner's § 2254 Petition was filed on April 22, 2009. In his § 2254 Petition, Petitioner raises the following seven grounds for habeas relief:

(1)     The motion court erred by failing to enter specific findings and conclusions regarding four of Petitioner's claims;

(2)     Petitioner received ineffective assistance of counsel because counsel failed to present evidence of Petitioner's preexisting hand injury because such evidence would have shown that he could not have committed the charged offenses;

(3)     The trial court erred by failing to declare a mistrial when the prosecutor commented on Petitioner's failure to testify;

(4)     The trial court erred by restricting defense counsel from asking the victim about his criminal record;

(5)     The trial court erred by preventing defense counsel from asking one of Petitioner's accomplices about his acquittal;

(6)     The prosecutor committed misconduct by allowing the investigating officer to testify untruthfully about the date on which he filed a police report;

(7)     The trial court erred by sentencing Petitioner to consecutive sentences for first-degree assault and armed criminal action.

Doc. 1.

# II.
# EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or

demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is

"new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001). It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. <u>McKinnon v. Lockhart,</u> 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." <u>Id.</u> at 833(citing <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." <u>Id.</u> (citing <u>Leggins v. Lockhart</u>, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. <u>Zinzer v. Iowa</u>, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of <u>Strickland v. Washington,</u> 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." <u>Id.</u> The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the <u>Strickland</u> prejudice." <u>Id.</u> at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar  must be a higher standard than the <u>Strickland</u> prejudice required to establish the underlying claim for ineffective assistance of counsel." <u>Id.</u> (citing <u>United States v. Frady</u>, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly

presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." <u>Id.</u> (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Respondent argues that Petitioner's § 2254 Petition for habeas relief should be denied because it is untimely. The limitation period of § 2244(d)(1) runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

For a Missouri defendant, a "judgment becomes final for purposes of appeal when the judgment and sentence are entered." <u>State v. Holtze</u>, 250 S.W.3d 745, 746 (Mo. Ct. App. 2008) (citing <u>State v. Welch</u>, 865 S.W.2d 434, 435 (Mo. Ct. App. 1993). An appeal must be filed within ten days thereafter. <u>State ex rel. Wagner v. Ruddy</u>, 582 S.W.2d 692, 693 (Mo. banc 1979).

The Eighth Circuit holds that for Missouri prisoners who do not file for transfer to the Missouri Supreme Court pursuant to Missouri Rules 83.01 and 83.04 "'the expiration of the time for seeking [direct] review' does not include the 90-day period for filing for certiorari" with the United

States Supreme Court. <u>Riddle v. Kemna</u>, 523 F3d 850, 855 (8th Cir. 2008). Rather, the statute of limitations commences to run when a Missouri prisoner fails to file, fifteen days after the appellate court's decision, the first motion to transfer to the Missouri Supreme Court. "The AEDPA statute of limitations, however, does not begin then if the alternative trigger, 'conclusion of direct review,' occurs later." Under such circumstances the "conclusion of direct review for purposes of §2244(d)(1)(A)" occurs "when the Missouri Court of Appeals issues its mandate." <u>Id.</u> at 856-57 (holding that the statute of limitations period begins to run "the day after the direct-appeal mandate issued").

Section 2244(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Thus, the statute provides that any additional period during which the statute is tolled is added to the one-year period. <u>Peterson v. Gammon</u>, 200 F.3d 1202, 1204 (8th Cir. 2000). While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled. <u>Williams v. Bruton</u>, 299 F.3d 981, 982 (8th Cir. 2002). The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending. <u>Id.</u> "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." <u>Beery v. Ault</u>, 312 F.3d 948, 950 (8th Cir. 2002) (citing <u>Peterson</u>, 200 F.3d at 1203). It is not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." <u>Id.</u> (citing <u>Painter v. Iowa</u>, 247 F.3d 1255, 1256 (8th Cir. 2001)). For Missouri prisoners the statute does not commence to run until the appellate court issues the mandate. <u>Johnson v. Kemna</u>, 451 F.3d 938, 939 (8th Cir. 2006) (holding that post-conviction proceedings in Missouri are not final until issuance of the mandate); <u>Payne v. Kemna</u>, 441 F.3d 570, 572 (8th Cir.

2006) ("Under Missouri state court procedures, [the petitioner's] post-conviction relief proceedings were not final until the issuance of the mandate.") ; Williams v. Bruton, 299 F.3d 981, 982-83 (8th Cir. 2002). Further, the statute is not tolled after the date the mandate issues on the appeal of a post-conviction relief motion whether or not the defendant files for certiorari with the United States Supreme Court. Lawrence v. Florida, 127 S.Ct. 1079, 1083 (2007) ("The application for state postconviction review is [] not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.").

Respondent argues that Petitioner's pro se State post-conviction relief motion was not properly filed in State court until April 4, 2003, and that, therefore, his § 2254 Petition is untimely. Indeed, if the 1-year statute of limitations commenced running on December 14, 2002, the day following the issuance of the mandate in Petitioner's direct appeal, and ran until April 4, 2003, the date Petitioner's signed pro se State post-conviction relief motion was filed, his § 2254 Petition is barred by the 1-year statute of limitations. See Artuz v. Bennett, 531 U.S. 4, 8 (2000) ("[A]n application [for post-conviction relief] is 'properly filed' when its delivery and acceptance are in compliance with applicable laws and rules governing filings."). Indeed, where an application for post-conviction relief does not comply with State law, as in Petitioner's case, the application was not signed, the application is not properly filed. See id; Runyan v. Burt, 521 F.3d 941 (8th Cir. 2008). Thus, the statute of limitations runs from the date the direct appeal is final until the application for post-conviction relief is properly filed, which in Petitioner's case is December 14, 2002, to April 4, 2003. Applying April 4, 2003, as the date Petitioner's pro se State habeas petition was filed for purposes of determining the running of the 1-year statute of limitations, the statue ran for 110 days between date the mandate issued on his direct appeal and the date the pro se motion was filed. The

statute was then tolled from April 4, 2003, until July 30, 2008, the date the mandate issued for the appeal of his State post-conviction relief motion. The statute then ran from July 31, 2008, until the date Petitioner filed his § 2254 Petition, April 22, 2009. Pursuant to such reasoning, Petitioner's § 2254 Petition is untimely.[1]

This court notes, however, that the motion court's reasoning upon finding that it had jurisdiction to consider Petitioner's Rule 29.15 motion is not clear. As such, it is not clear when the State court found that Petitioner's application for post-conviction relief was properly filed. In the interests if justice, therefore, for purposes of calculating the period during which the statute ran, the court finds that the statute was tolled from the date Petitioner mailed his unsigned pro se State post-conviction relief motion until the mandate issued on the appeal of his post-conviction relief motion.[2] As such, the court finds that Petitioner's § 2254 Petition is timely.

---

[1] The court notes that were it to find that the statute was not tolled until April 4, 2003, the court would have to consider whether equitable tolling is applicable. Prior to Riddle, 523 F.3d at 857, Eighth Circuit precedent held that the 1-year statute of limitations did not commence to run until ninety days after a decision issued denying a direct appeal, thus giving a habeas petitioner the benefit of the time during which he could file for certiorari with the United States Supreme Court. In Riddle, 523 F.3d at 857, the Eighth Circuit held that its abrogation of this precedent was an "extraordinary circumstance," which justified the possibility of equitable tolling. Thus, arguably, Petitioner would be entitled to have the statute tolled for an additional ninety days. As such, the statute would have run for only twenty days prior to April 4, 2003. Under such circumstances, Petitioner's § 2254 Petition would be timely filed.

[2] The court notes that in Runyan, 521 F.3d at 944, the Eighth Circuit held that the State court "never specifically determined Runyan's application for post-conviction relief was untimely and that "[t]his [did] not alter the inescapable conclusion Runyan's Iowa PCR application was not properly filed under Iowa law." (citing Artuz, 531 U.S. at 8). The court further held in Runyan, 521 F.3d at 944, that "the fact the Iowa courts proceeded to deny Runyan's application on the merits does not alter our conclusion." (citing Carey v. Saffold, 536 U.S. 214, 225-26 (2002) (declaring a state court ruling "on the merits" does not necessarily mean the underlying petition was timely); Lewis v. Norris, 454 F.3d 778, 780 (8th Cir.2006) ("[T]he Supreme Court has ... instructed federal courts to determine independently whether state court proceedings are timely, even if the state courts treat them as such.").

Petitioner did not raise the issues of Grounds 4-7 before the Missouri appellate court. As such, the court finds that he has procedurally defaulted these claims. Petitioner argues that his procedural default of Grounds 4-7 should be excused because of ineffective assistance of appellate counsel in that his appointed counsel did not raise these defaulted claims before the Missouri appellate court. The Eighth Circuit has held that "[i]neffective assistance of trial or appellate counsel may be cause excusing a procedural default." Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002) (citing Murray v. Carrier, 477 U.S. 478, 491-92, (1986)). "However, in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court." Id. (citing Edwards v. Carpenter, 529 U.S. 446, 450-53 (2000); Tokar v. Bowersox, 198 F.3d 1039, 1051 n. 13 (8th Cir.1999)). In any case, the "'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy;' counsel is not required to raise every conceivable issue on appeal." Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996). The Eighth Circuit has stated that "'[l]aw is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal. . . . It is possible to criticize [an attorney's] choice in hindsight.'" Id. (quoting Simmons v. Lockart, 915 F.2d 372, 275 (8thCir. 1990)).

In Petitioner's case, his defaulted claims relate to trial court error. Petitioner did not allege ineffective assistance of direct appeal counsel in his post-conviction relief appeal. Doc. M. Petitioner, therefore, did not properly raise his ineffectiveness claim in State court. As such, the court finds that Petitioner has not stated cause and prejudice to excuse his procedural default. See Williams, 311 F.3d at 897. The court further finds that Petitioner should be denied habeas relief on the basis of Grounds 4-7.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the

merits in the state court." Id. at 412.  The Court further held that the writ of habeas corpus may issue

only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to .  .  . clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of .  .  . clearly established
> Federal Law, as determined by the Supreme Court of the United
> States."  Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court decides
> a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the
> correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes

that the relevant state-court decision erroneously or incorrectly applied clearly established federal law.

See id. at 411.  "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland

v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411).  See also

Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary

to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as

set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

from [the Court's] precedent." 529 U.S. at 406. See also  Price v. Vincent, 538 U.S. 634, 640 (2003).

It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so

long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early

v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." <u>Williams</u>, 529 U.S. at 413. <u>See</u> <u>also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in <u>Penry</u> that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." <u>Id.</u> at 793 (citing <u>Williams</u>, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." <u>Atley v. Ault</u>, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." <u>Boyd v. Minnesota</u>, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." <u>King v. Kemna</u>, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." <u>Lomholt v. Iowa</u>, 327 F.3d 748, 752 (8th Cir. 2003). <u>See</u> <u>also</u> <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that

the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C.

§ 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court

reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has

addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Luebbers,

371 F.3d 458 (8th Cir. 2004), cert. denied,  543 U.S. 1189 (2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

# V.
# DISCUSSION

## Ground 1- The motion court erred by failing to enter specific findings and conclusions regarding four of Petitioner's claims:

Petitioner asserted five claims for post-conviction relief before the motion court. After a hearing, the motion court determined that four of Petitioner's claims were not cognizable pursuant to Missouri Rule 29.15, because they could have been raised on direct appeal. The claims which the motion court found not cognizable alleged trial court error and prosecutorial misconduct.

Upon addressing the issue of Petitioner's Ground 1, the Missouri appellate court held:

> Generalized Rule 29.15 findings will be deemed adequate if they are sufficient for meaningful appellate review. Morrison v. State, 75 S.W.3d 893, 896 (Mo. App.2002); State v. Jackson, 925 S.W.2d 856, 861 (Mo. App.1996). In light of the motion court's statements at the evidentiary hearing and its docket entry that "all claims except # 8A are not cognizable under Rule 29.15," its finding that Claim A "was the only allegation properly before the court" is sufficient for meaningful review if that conclusion was challenged on its merits, which Movant has not done.

Moreover, findings and conclusions are not required on issues that are not cognizable or cannot be properly raised in a post-conviction motion. Jackson, 925 S.W.2d at 861. Movant's other claims of trial error and prosecutorial misconduct generally are of this nature. See Tisius v. State, 183 S.W.3d 207, 212 (Mo. banc 2006); Seibert v. State, 184 S.W.3d 624, 629 (Mo. App.2006).

Crowder, 258 S.W.3d at 84-85.

The State appellate court then concluded that Petitioner had "not firmly and definitely persuaded [the court] that any mistake was made." As such, the State appellate court affirmed the judgment of the motion court. Id. at 85.

First, the basis of Petitioner's Ground 1 is an error or defect in State post-conviction proceedings. "'An infirmity in state post-conviction proceedings does not raise a constitutional issue cognizable in federal habeas petition.'" Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (quoting Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir.1994) (quoting Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.1990)). This rule in founded on the principle that there is no constitutional right to state post-conviction proceedings. As such, irregularities in such proceedings do not rise to the level of a constitutional violation. See Pennsylvania v. Finley, 481 U.S. 551, 557 (1991); Coleman v. Thompson, 501 U.S. 722, 752 (1991).

Second, Petitioner could have raised, in his direct appeal, the four claims which were not considered by the motion court. Pursuant to Missouri law, claims are not cognizable on post-conviction review if they could have been raised on direct appeal. See State v. Tolliver, 839 S.W.2d 296, 298 (Mo. Ct. App. 1992) ("Rule 29.15 cannot be used to obtain postconviction review of matters which were or should have been raised on direct appeal."). "Issues that could have been raised on direct appeal-even if constitutional claims-may not be raised in postconviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." Id. (citing Davis v. State, 804 S.W.2d 31, 34 (Mo. Ct. App.1990)). Petitioner has

not suggested any reason why he could not have raised in his direct appeal the four issues found not cognizable by the motion court. The court finds, therefore, that the Petitioner's Ground 1 is not cognizable pursuant to § 2254 and that relief on its basis should be denied.

Third, under federal law claims are not cognizable pursuant to § 2255 if they could have been raised on direct appeal. See e.g., Lefkowitz v. United States, 446 F.3d 788, 791 (8th Cir. 2006); Dukes v. United States, 255 F.3d 912 (8th Cir. 2001). As such, the court finds, in the alternative, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the decision of the Missouri appellate court in regard to Petitioner's Ground 1 resulted in a decision which was based on a reasonable determination of the facts in light of the evidence presented at trial. See § 2254(d)(2). As such, the court finds that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - Petitioner received ineffective assistance of counsel because counsel failed to present evidence of Petitioner's preexisting hand injury because such evidence would have shown that he could not have committed the charged offenses:**

At the evidentiary hearing before the motion court, Petitioner testified that two months before the date of the charged offenses he had fractured two bones in his right hand; that his hand had been in a cast; that prior to the date of the charged offenses the cast had been removed; and that at the time of the attack he could not hold a gun with his right hand. Resp. Ex. Q at 11-13.

Upon considering Petitioner's Ground 2, the Missouri appellate court held as follows:

> Counsel is not ineffective for pursuing reasonable trial strategy. State v. Ferguson, 20 S.W.3d 485, 508 (Mo. banc 2000), citing State v. Harris, 870 S.W.2d 798, 816 (Mo. banc 1994). Counsel has wide latitude in conducting a defense and may use his best judgment in matters of trial strategy. State v. Neal, 849 S.W.2d 250, 258 (Mo. App.1993). Courts will not condemn reasonable use of discretion in such matters. State v. Hamilton, 892 S.W.2d 774, 784 (Mo. App.1995). This is because "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Harris, 870 S.W.2d at 816-17,

quoting Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Trial counsel testified at the motion hearing, inter alia, that Movant raised the hand injury as a possible defense. She followed up by obtaining Movant's medical consent, getting his file from the treating physician, and reviewing his medical records. She made a strategic decision not to use the information at trial. She doubted, from Movant's medical records, that the physician's testimony would provide a defense. Moreover, Movant was charged with acting in concert with two other persons. Thus, he could be guilty without firing the gun, and a defense based on his hand injury would not have addressed such guilt.

Movant contends that trial counsel's strategy was unreasonable. The motion court specifically concluded otherwise:

[Trial counsel's] trial strategy to not use evidence of Defendant's injury was reasonable. [Trial counsel] investigated Movant's injury and determined that medical records and testimony would contradict and refute Movant's claim as to the severity of his condition at the time of the crime. The medical evidence likely would have shown Movant not only to be dishonest, but also that he was capable of pulling a trigger with his dominant right hand. Furthermore, even if a jury believed evidence regarding Movant's injury, they could still conclude Movant not only to be dishonest, but also that he was capable of pulling a trigger with his dominant right hand. Furthermore, even if a jury believed evidence regarding Movant's injury, they could still conclude that Movant could have pulled the trigger of the gun with his right hand despite its injury, that he could have used his left hand to pull the trigger, or based upon the evidence presented at the trial that even if Movant did not pull the trigger he was still guilty of the crimes by acting in concert with his co-defendants.

On the record before us, the motion court did not clearly err in so finding.

Crowder, 258 S.W.3d at 83-84.

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 2.

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687

(1984)).  The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690.  To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. <u>Id.</u> at 697.  To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." <u>Id.</u> at 697.

Additionally, the court notes that the Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides.  No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.  Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted).  ...

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent

in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  (citation omitted).  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.  (citation omitted).

Additionally, Defense counsel is not required to present evidence that is "either highly implausible or dramatically impeachable." Thomas v. Bowersox, 208 F.3d 699, 702 (8th Cir. 2000).  Further, federal law provides that "[w]hen counsel makes a reasoned strategic decision, it is 'virtually unchallengeable,' ... even when that strategic decision later proves unwise." Walker v. Lockhart, 852 F.2d 379, 381 (8th Cir. 1988) (quoting Strickland, 466 U.S. at 690) and (citing Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir.1987); Hayes v. Lockhart, 766 F.2d 1247, 1251 (8th Cir. 1985)).

In Petitioner's case, the Missouri appellate court first considered that the two-pronged test of Strickland, 466 U.S. 668, was applicable to Petitioner's claim of ineffective assistance of counsel.  The court proceeded to consider counsel's testimony that she investigated Petitioner's hand injury as a possible defense and that she made a strategic decision, based on her investigation, that introduction of evidence regarding Petitioner's prior hand injury would not have provided him with a viable defense.  Pursuant to Strickland, the Missouri appellate court considered that counsel's performance is presumed reasonable and concluded, given the facts of Petitioner's case, it was reasonable trial strategy not to introduce evidence of Petitioner's prior hand injury.  As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. 668; Thomas, 208 F.3d at 702; Walker, 852 F.2d at 381.  Additionally, the decision of the Missouri appellate court in regard to Petitioner's Ground 2 resulted in a decision which was based on a reasonable determination of the facts in light of the evidence presented at trial.

See § 2254(d)(2). As such, the court finds that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

## Ground 3 - The trial court erred by failing to declare a mistrial when the prosecutor commented on Petitioner's failure to testify:

During closing argument the prosecutor, in an attempt to refer to the statements that Petitioner had made to the investigating officer, stated, "Let's consider John Crowder's testimony for a second. I'm sorry, not his testimony but what he stated to Rob Pippenger." Resp. Ex. D at 193. Defense counsel then requested a mistrial on the basis that the prosecutor had commented on Petitioner's failure to testify. Id. The court denied counsel's request, and the prosecutor resumed his closing argument. Id. at 193-94.

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held:

[E]ven if the reference could be construed as an improper reference to [Petitioner's] failure to testify, the prosecutor's statement was immediately corrected. In fact, the prosecutor corrected the statement without prompting from the trial court. Upon examining the comment in the context in which it appeared, when the prosecutor informed the jury that he had misspoken, any claim of a improper comment was cured. The trial court did not abuse its discretion in denying [Petitioner's] motion for a mistrial."

Resp. Ex. E at 4.

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 3. Under federal law, to establish a violation of due process due to improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). A petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. Crespo v. Armontrout,

818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (quoting Darden, 477 U.S. at 181). As further stated by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

> This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir.1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Hernandez, 779 F.2d at 460; see also United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir.1993).

United States v. Conrad, 320 F.3d 851, 855 (8th Cir. 2003).

Under federal law "[t]he trial court has broad discretion in controlling the direction of ... closing arguments," and an appellate court will not reverse the trial court's determinations in this regard "absent a showing of abuse of discretion." United States v. Johnson, 968 F.2d 768, 769 (8th Cir.1992) (citing United States v. Segal, 649 F.2d 599, 604 (8th Cir.1981)). "The facts of each case must be examined independently to determine if the prosecutor's remarks were unduly prejudicial to the defendant." Id. at 770 (citing United States v. Splain, 545 F.2d 1131, 1135 (8th Cir.1976)).

Indeed, under federal law a prosecutor may not comment adversely concerning a defendant's failure to testify. See Griffin v. State of California, 380 U.S. 609, 615 (1963). Specifically, the Eighth Circuit has explained federal law in regard to prosecutorial comments as to a defendant's failure to testify as follows:

Comments by a prosecutor on an accused's failure to take the stand violate the accused's fifth amendment right to remain silent. Griffin v. State of California, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Either direct or indirect references to defendant's choice not to testify may establish a constitutional violation. Indirect comments rise to the level of a constitutional violation if the statements either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally and necessarily understand the comments as highlighting the defendant's failure to testify. Robinson v. Crist, 278 F.3d 862, 866 (8th Cir.2002); United States v. Smith, 266 F.3d 902, 906 (8th Cir.2001) (citations omitted). Prosecutorial comments must be reviewed in context, Graham, 212 F.3d at 439-40, and we will reverse only if the defendant shows both that the comments were improper and that they resulted in prejudice. Stringer v. Hedgepeth, 280 F.3d 826, 829-30 (8th Cir.2002).

Herrin v. United States, 349 F.3d 544, 546 (8th Cir. 2003). See also Graham v. Dormire, 212 F.3d 437, 429-40 (8th Cir. 2000) ("Indirect comments [regarding a defendant's failure to testify] constitute a constitutional violation if they manifest the prosecutor's intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify. Prosecutorial comments, however, must be examined in context").

Consistent with federal law, upon considering the issue of Petitioner's Ground 3, the Missouri appellate court considered that the prosecutor took immediate action to rectify his allegedly improper statement. See Conrad, 320 F.3d. at 855. Under such circumstances it was not necessary for the trial court to take remedial action. The Missouri appellate court further considered the context of the prosecutor's statement and concluded that, to the extent it was an improper comment on Petitioner's failure to testify, the "comment was cured." See Herrin, 349 F.3d at 546; Graham, 212 F.3d at 429-40. Further, consistent with federal law, upon finding no error based on the prosecutor's argument,

the Missouri appellate court considered that controlling closing argument is within the discretion of the trial court.  See Johnson, 968 F.2d at 769.  As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law.  Additionally, the court finds that the Missouri reasonably applied federal law to the facts of Petitioner's case.  The court finds, therefore, that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

## VI.
## HEARING

Petitioner has requested that the court conduct an evidentiary hearing.  Under the Rules Governing Section 2254 cases, the court has the discretion to grant an evidentiary hearing.  Rule 8(a) states that "[i]f the petition is not dismissed at the previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings ... determine whether an evidentiary hearing is required."  In considering Petitioner's petition, the court has been furnished with a transcript of Petitioner's trial, the legal file, as well as various post-trial materials.  Upon review of the state court record, as supplemented by the motions and pleadings in this case, the undersigned finds that the record as it now exists is adequate and that no evidentiary hearing is required.  See 28 U.S.C. § 2254, Rule 8(a); Amos v. State, 849 F.2d 1070, 1072 (8th Cir. 1988).  Therefore, the undersigned finds that Petitioner's Motion for Evidentiary Hearing should be denied.

## VII.
## CONCLUSION

The court finds that Petitioner's Motion Evidentiary Hearing should be denied.  The court further finds that Petitioner's Grounds 1 and 2 are not cognizable pursuant to § 2254; that, Ground

3 and, alternatively, Grounds 1 and 2 are without merit; and that Petitioner has procedurally defaulted Grounds 4-7.  As such, the court finds that Petitioner's § 2254 Petition should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude.  Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should  not be granted a certificate of appealability in this matter.  <u>See</u> <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED**; Doc. 1

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion for Evidentiary Hearing be **DENIED**; Doc. 17

The parties are advised that Petitioner has fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>15th</u> day of  June, 2010.